CA Nos. 15-56880, 16-55089, 16-55626
DC No. CV13-06004-JAK (AGRx)

Date of Decision: March 21, 2018
Panel Members: Judges M. Smith, Jr., Murguia and Nguyen

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

---

PHARRELL WILLIAMS, ET AL.,
*Plaintiffs/Counter-Defendants/Appellants/Cross-Appellees*,

and

MORE WATER FROM NAZARETH PUBLISHING, INC., ET AL.,
*Counter-Defendants/Appellants/Cross-Appellees.*

v.

FRANKIE CHRISTIAN GAYE, ET AL.,
*Defendants/Counter-Claimants/Appellees/Cross-Appellants.*

---

Appeal From Judgment Of The United States District Court
For The Central District Of California
(Hon. John A. Kronstadt, Presiding)

---

## RESPONSE TO PETITION FOR REHEARING EN BANC

---

ARNOLD & PORTER KAYE SCHOLER LLP
MARTIN R. GLICK (No. 40187)
martin.glick@arnoldporter.com
DANIEL B. ASIMOW (No. 165661)
daniel.asimow@arnoldporter.com
Three Embarcadero Center, 10th Floor
San Francisco, California 94111-4024
Telephone: 415.471.3100
Facsimile: 415.471.3400

KING & BALLOW
RICHARD S. BUSCH (TN BPR 14594)
rbusch@kingballow.com
315 Union Street, Suite 1100
Nashville, Tennessee 37201
Telephone: 615.259.3456
Facsimile: 615.726.5417

ARNOLD & PORTER KAYE SCHOLER LLP
LISA S. BLATT
lisa.blatt@arnoldporter.com
601 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: 415.942.5000
Facsimile: 415.942.5999

KING & BALLOW
PAUL H. DUVALL (No. 73699)
pduvall@kingballow.com
6540 Lusk Boulevard, Suite 250
San Diego, California 92121
Telephone: 858.597.6000
Facsimile: 858.597.6008

(Additional counsel listed on next page)

WARGO & FRENCH LLP
MARK L. BLOCK (No. 115457)
mblock@wargofrench.com
1888 Century Park East, Suite 1520
Los Angeles, California 90067
Telephone: 310.853.6355
Facsimile: 310.853.6333

*Attorneys for Defendants/Counter-Claimants/Appellees/Cross-Appellants
Frankie Christian Gaye, Nona Marvisa Gaye*

LAW OFFICES OF PAUL N. PHILIPS, APLC
PAUL N. PHILIPS (No. 187928)
pnp@pnplegal.com
468 North Camden Drive, Suite 200
Beverly Hills, California 90210
Telephone: 328.813.1126
Facsimile: 310.854.6902

*Attorneys for Defendant/Counter-Claimant/Appellee/Cross-Appellant
Marvin Gaye III*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................. 1

I.    THE PANEL CORRECTLY FOUND THAT THE DISTRICT COURT'S DENIAL OF SUMMARY JUDGMENT WAS NOT APPEALABLE. .................... 4

II.   THE DISTRICT COURT AND PANEL DID NOT DEVITATE FROM THIS CIRCUIT'S COPYRIGHT PRECEDENTS. .................................. 8

    A.    The Panel Majority's Approach To Broad And Thin Copyright Protection Is Squarely In Line With Circuit Precedent. ....................... 9

    B.    The District Court Properly Applied This Court's Precedents Regarding Summary Judgment In Music Copyright Cases. .............. 11

III.  EN BANC REVIEW IS INAPPROPRIATE FOR ADDITIONAL REASONS. ........................................ 15

    A.    The Scope Of The Copyright In "Give" Should Not Have Been Limited to the Lead Sheet Deposited With the Copyright Office. ......... 15

    B.    The Panel Decision Will Have No Chilling Effect. ................................................ 19

CONCLUSION ............................................................. 21

- i -

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435 (9th Cir. 2004) ........................................ 9

*Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620 (9th Cir. 2010) ........................................ 14

*Bright Tunes Music Corp. v Harrisongs Music, Ltd.*, 420 F. Supp. 177 (S.D.N.Y. 1976) ........................ 20

*Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147 (1st Cir. 1994), *disapproved on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010) ........................ 18

*Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236 (9th Cir. 2014) ........................................ 7

*Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763 (9th Cir. 2003) ........................................ 9

*First Nat'l Mortg. Co. v. Federal Realty Inv. Tr.*, 631 F.3d 1058 (9th Cir. 2011) ........................ 7

*Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768 (9th Cir. 2018) ........................................ 4

*Frank C. Poralla Grp., LLC v. Ocean View Inv. Holdings, LLC*, 784 F.3d 177 (3d Cir. 2015) .................. 7

*Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072 (9th Cir. 2006) ........................ 14

*Hill v. Homeward Residential, Inc.*, 799 F.3d 544 (6th Cir. 2015) ........................................ 7

*Ladd v. Law & Tech. Press*, 762 F.2d 809 (9th Cir. 1985) ........................................ 18

*Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904 (9th Cir. 2010) ........................................ 9

*Nat'l Conference of Bar Exam'rs v. Multistate Legal Studies, Inc.*, 692 F.2d 478 (7th Cir. 1982) ............ 18

*Newton v. Diamond*, 388 F.3d 1189 (9th Cir. 2004)     14

*Oritz v. Jordan*, 562 U.S. 180 (2011)     1, 2, 5, 7

*Rentmeester v. Nike, Inc.*, 883 F.3d 1111 (9th Cir. 2018)     4, 10, 14

*Rice v. Fox Broad. Co.*, 330 F.3d 1170 (9th Cir. 2003)     14

*Satava v. Lowry*, 323 F.3d 805 (9th Cir. 2003)     9

*Swirsky v. Carey*, 376 F.3d 841 (9th Cir. 2004)     10, 11, 13, 20

*Three Boys Music v. Bolton*, 212 F.3d 477 (9th Cir. 2000)     10, 11, 20

*Unitherm Food Sys, Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394 (2006)     4

*VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871 (9th Cir. 2016)     14

**Statutes and Rules**

Copyright Act of 1909, 35 Stat. 1075 §1(e) (repealed 1978)     18

FED. R. CIV. P.
50     4, 7, 8
50(a)     4
50(b)     4
56     8
56(a)     1

**INTRODUCTION**

As the panel decision explains, an order denying a summary judgment motion, at least if it does not involve a pure issue of law, is not appealable following a trial on the merits.  Slip op. 22–24.  The Supreme Court affirmed this principle in *Oritz v. Jordan*, 562 U.S. 180, 183–84 (2011) ("May a party . . . appeal an order denying summary judgment after a full trial on the merits?  Our answer is no.").  The rehearing petition asks this Court to give a different answer by creating a broad exception for "matters of law."  But every summary judgment motion asks a district court to determine that "there is no genuine dispute as to any material fact and the movant is entitled to judgment *as a matter of law*."  FED. R. CIV. P. 56(a) (emphasis added).  Appellants' proposed exception would swallow the rule, requiring this Court to routinely review orders denying summary judgment and effectively doubling the workload in many appeals by putting at issue two separate factual records.  Whatever the viability of an exception to the *Ortiz* rule for pure issues of law, it has no application here.

Notably, the rehearing petition abandons any claim that Appellants were entitled to a new trial[1] and argues only that the

---

[1] The panel majority carefully considered and rejected Appellant's new trial argument.  Slip op. 24–39.

District Court's summary judgment order should be reversed. As a result, the *Ortiz* rule is dispositive. Nevertheless, to the extent the Court considers the two copyright law issues raised in the petition, the panel majority's decision was entirely correct and faithful to precedent. Appellants mischaracterize the concept of thin protection. Thin protection arises when a given idea is subject to only limited modes of expression. Given the broad range of expression achievable in music, it is not at all surprising that the thin protection/virtual identity standard has never been applied in a music case. Likewise, in claiming the District Court failed to sufficiently compare the works at issue, Appellants mischaracterize the District Court's order, which carefully followed this Court's precedents in finding a triable issue of substantial similarity.

There are additional reasons why en banc review is unwarranted. As the panel majority recognized, there is an issue in this case as to the scope of Marvin Gaye's composition copyright and whether the District Court improperly limited it to elements found in a deposit copy submitted to the copyright office. Resolution of this issue is a prerequisite to any consideration of the propriety of the denial of summary judgment.

- 2 -

Finally, contrary to the protestations of Appellants and their amici, the sky is not falling. Such assertions have been made before, after this Court and others found infringement by well-known musicians. By definition, popular musicians are popular and have many friends who will take up their cause. But cases are tried on the facts and the law, not public opinion. In this case Appellants repeatedly said that they were trying to imitate Marvin Gaye and "make a song like 'Got to Give It Up'" ("Give"), only to later claim under oath that their prior statements were untrue. On the merits, the two songs sounded remarkably similar both to listeners and to experts. Qualified musicologists for the Gayes identified numerous elements of similarity, a "constellation" described as "stunning" and "highly unusual." Reasonable minds can perhaps differ—compare the analyses found in the amicus briefs submitted before the panel decision[2]—but the question here was ultimately one for the jury, as the District Court found in its 56-page order denying the Thicke Parties' motion

---

[2] Fourteen eminent musicologists submitted a detailed brief concurring with the opinions and methodology of the two musicologists who testified for the Gayes. *See* Dkt. 47. Twelve of the most famous composers of contemporary music and twenty-one professors of law, music and business also filed a brief supporting the verdict. *See* Dkt. 46.

for a new trial (ER4) and the panel majority painstakingly found in concluding that there was ample evidence to support the verdict.

## I.

## THE PANEL CORRECTLY FOUND THAT THE DISTRICT COURT'S DENIAL OF SUMMARY JUDGMENT WAS NOT APPEALABLE.

Before trial, the District Court denied Appellants' motion for summary judgment. ER110. The case then proceeded to a seven-day jury trial. The Thicke Parties did not make a Rule 50(a) motion before the case was submitted to the jury. This precluded them from making a Rule 50(b) motion. ER7–9. On appeal, the Thicke Parties accordingly premised their entire argument for reversal on the contention that the District Court should have granted them summary judgment.[3]

---

[3] Amici Curiae RIAA and NMPA appear to contend this Court should overlook the absence of a Rule 50 motion so it can provide "guidance" in music copyright cases. *See* Dkt. 100-2 at 3. As even Appellants apparently recognized in not pursuing a Rule 50 argument on appeal, this Court cannot grant judgment as a matter of law based on the trial record unless both Rule 50(a) and (b) motions were made below. *See Unitherm Food Sys, Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 401 (2006); slip op. at 48–49. In any event, to the extent the Court considers this amicus brief at all (*see* Dkt. 105 (opposition to motion to file amicus curiae brief based on amici's non-disclosure of counter-defendants' partially controlling interest)), it provides no justification for ignoring important rules of appellate procedure. The cited cases arise in entirely different procedural contexts. *See, e.g., Rentmeester v. Nike, Inc.*, 883 F.3d 1111 (9th Cir. 2018) (affirming order granting motion to dismiss); *Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768 (9th Cir. 2018) (affirming

(continued . . . )

- 4 -

Relying on *Ortiz*, the panel majority held that the summary judgment order was not reviewable. The panel noted that before *Ortiz*, this Court had "carved out" a narrow exception for pure issues of law and that it was an open question whether even this exception survived *Ortiz*. But whatever the viability of this exception, it was confined to "'purely legal' issues capable of resolution 'with reference only to undisputed facts.'" Slip op. 23 (citing *Ortiz*, 562 U.S. at 189). The panel properly noted that the fact-bound inquiry into whether two songs are sufficiently similar under the extrinsic test was "far afield" from the examples of purely legal questions reviewed under the pre-*Ortiz* exception. *Id.*

In contending otherwise, the dissent noted that the issue of substantial similarity is sometimes determined as a matter of law and that (when the issue is properly preserved) this Court sometimes concludes that two works are sufficiently different that there is no substantial similarity as a matter of law. Slip op. 80–83. The panel majority reviewed the authorities cited by the dissent, noted that "[a]ll . . . arise from a different procedural posture" and concluded that "[n]one . . . authorizes us to review a factbound summary judgment denial after a

---

( . . . continued)
order granting summary judgment).

full trial on the merits . . . ." *Id.* at 50. Indeed, the panel majority stated that "[t]he dissent's position violates every controlling procedural rule involved in this case." *Id.* at 47.

The rehearing petition contends that substantial similarity was a "purely legal issue . . . capable of resolution with reference only to undisputed facts." Pet. 13. This contention ignores the summary judgment record. The District Court was presented with numerous factual disputes. Based on its view that Marvin Gaye's copyright was limited to the deposit copy, the Court weighted and considered expert testimony about what was reflected in the lead sheet and how similar or dissimilar each element was. ER122–32. It considered evidence about what constituted scènes à faire. ER132–33. It weighed evidence even as specific as the significance of what beat the root of a bassline is played on. ER128.

In short, the District Court was confronted with the type of issue presented in many, perhaps most, motions under Rule 56: is there a genuine dispute of fact or may the issue be resolved as a matter of law? If it were enough to contend that the District Court erred by not ruling in favor of the moving party as "matter of law" then every denial of summary judgment would be reviewable after a full trial on the merits and the rule of *Ortiz* would be eviscerated. If still valid at all, the

exception for reviewing summary judgment orders after a full trial must be limited to pure issues of law (e.g., construction of a statute or a written instrument) where nothing that can happen at trial will change the contours of the legal issue.[4]

The consequences of the change in appellate procedure sought by Appellants are vast. In most cases, an appellant will have properly preserved its Rule 50 challenge and will argue that there was error in denying its post-trial motion for judgment as a matter of law. But why not also argue that the trial court should have granted an earlier Rule 56 motion and that the trial never should have happened? Two bites at the apple are always better than one. The result will be a doubling of work on many appeals. The reviewing court will have to address

---

[4] The rehearing petition does not cite a single case where an order denying summary judgment in a copyright case was reviewed after a trial on the merits. Indeed, on this issue the petition cites only two cases at all beyond *Ortiz* itself. *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1243 (9th Cir. 2014), considered the purely legal issue of whether an employee can decline leave under the Family and Medical Leave Act. *First National Mortgage Co. v. Federal Realty Investment Trust*, 631 F.3d 1058, 1065–67 (9th Cir. 2011), considered whether the language of a written instrument was reasonably susceptible to a party's proposed interpretation. Where, as here, a summary judgment order concerns issues beyond "the substance and clarity of pre-existing law" (*Ortiz*, 562 U.S. at 190), it is not reviewable following a full trial. *See, e.g., Frank C. Poralla Grp., LLC v. Ocean View Inv. Holdings, LLC*, 784 F.3d 177, 185–89 (3d Cir. 2015); *Hill v. Homeward Residential, Inc.*, 799 F.3d 544, 549–51 (6th Cir. 2015).

arguments and weigh two separate factual records. And in any case where it mattered (because the defendant's Rule 50 motion was properly denied but its Rule 56 motions should have been granted), the proposed loophole would ask the reviewing court to close its eyes to the trial record and direct a result it knows to be unjust. Appellants' attempt to upend settled law should be rejected.

## II.

### THE DISTRICT COURT AND PANEL DID NOT DEVITATE FROM THIS CIRCUIT'S COPYRIGHT PRECEDENTS.

In their rehearing petition, Appellants raise two copyright issues. First, they contend that the District Court at summary judgment should have applied a "virtual identity" standard. Second, they contend that the District Court did not make an independent judgment whether the works were sufficiently similar to give rise to a jury question. The panel reached the first question in connection with Appellants' (now abandoned) argument that the District Court should have granted them a new trial. Slip op. 18–22. It did not reach the second question in light of its conclusion that the summary judgment order was not reviewable.

- 8 -

### A. The Panel Majority's Approach To Broad And Thin Copyright Protection Is Squarely In Line With Circuit Precedent.

In order to prevent a copyright holder from obtaining a monopoly over ideas, this Court has developed a special "virtual identity" standard that it has applied in a limited number of copyright cases when the idea at issue is subject to only limited modes of expression. *See, e.g.*, *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 916 (9th Cir. 2010) (idea of "fashion dolls with a bratty look or attitude"); *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003) ("idea . . . of photographing the Skyy bottle"); *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003) ("idea of producing a glass-in-glass jellyfish sculpture"); *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443–44 (9th Cir. 2004) (idea of a desktop metaphor for operating a computer).

The *Mattel* opinion explains this well:

> Given that others may freely copy a work's idea (and other unprotectable elements), we start by determining the breadth of the possible expression of those ideas. If there's a wide range of expression (for example, there are gazillions of ways to make an aliens-attack movie), then copyright protection is "broad" and a work will infringe if it's "substantially similar" to the copyrighted work. If there's only a narrow range of expression (for example, there are only so many ways to paint a red bouncy ball on blank canvas), then copyright protection is "thin" and a work must be "virtually identical" to infringe. (616 F.3d at 913–14 (citations omitted))

Accordingly, to displace the ordinary "substantial similarity" standard, a copyright defendant must in the first instance demonstrate

- 9 -

what idea it seeks to express and that there is a limited breadth to the possible expression of that idea. No such showing was made here by Appellants, nor could it be. The musical idea embodied in both "Give" and "Blurred Lines" ("Blurred") is an entertaining and catchy dance song. Experience tells us that there are "gazillions" of ways to compose a dance song. Not surprisingly, Appellants fail to cite a single case where the thin protection/virtual identity standard has been applied in music.

The panel correctly found that "[m]usical compositions are not confined to a narrow range of expression." Slip op. 19. This comports with prior circuit decisions in music copyright cases. *See, e.g.*, *Swirsky v. Carey*, 376 F.3d 841, 849 (9th Cir. 2004) (applying substantial similarity test); *Three Boys Music v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) (same); *see also Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1120–23 (9th Cir. 2018) (broad protection applied to a photograph of Michael Jordan because of the range of creative choices open to photographer).[5]

---

[5] Appellants contend that, regardless of genre, the "virtual identity" standard should apply here because the Gayes purportedly identified a limited number of similarities between the songs. Pet. 8–9. This mischaracterizes both the proper application of the test and the record. This Court has never tied the "virtual identity" standard to the *number* of similarities, without consideration of their significance or context. In any event, as the panel majority explains,

(continued . . . )

- 10 -

### B.    The District Court Properly Applied This Court's Precedents Regarding Summary Judgment In Music Copyright Cases.

Appellants also contend, as they did before the panel, that the District Court, after laboriously reviewing the evidence and filtering out unprotected elements, "abdicated its duty" (Dkt. 15 at 29) by not taking the final step of comparing the elements to determine if there was a genuine issue of fact. This contention is belied by the record. Judge Kronstadt's detailed summary judgment order shows that he considered both the protectability of the elements identified by the Gayes and the degree of similarity to the corresponding elements found in Blurred. *See* ER122–33. As just one example, with respect to Give's "signature phrase," the District Court reviewed and analyzed the expert report from the Gaye's musicologist that identified five distinct similarities, including (a) a repeating starting note, (b) "identical scale degree sequence of 5-6-1 followed by 1-5," (c)

---

( . . . continued)

the Gayes' musicologists identified many similarities between the works. Slip op. 12. Even after the District Court (erroneously) limited the scope of the copyright to the deposit copy, there remained similarities in six elements: the "signature phrases, hooks, bass lines, keyboard chords, harmonic structures and vocal melodies." ER133. These similarities were greater (both in number and importance) than those identified in *Swirsky* or *Three Boys*. *See Swirsky*, 376 F.3d at 845 (identifying four similar elements: "basic shape and pitch emphasis," "bassline," "tempo" and key); *Three Boys*, 212 F.3d at 485 (identifying five similar elements: "title hook phrase," "cadence," "instrumental figures," "verse/chorus relationship," and "fade ending").

- 11 -

"identical rhythms for the first six tones," (d) use of melisma on the last lyric beginning with the scale degrees 1-5, and (e) "substantially similar melodic contours." ER122–23. The District Court weighed this report against that offered by the Thicke Parties' musicologist. ER123–24. It repeated this analysis for each of the other elements identified by the Gayes at summary judgment as protected and copied. ER125–30. Because of its view that the scope of Marvin Gaye's copyright was limited by the deposit copy, the District Court concluded that some of these elements were unprotected and eliminated them from the analysis. *Id.* It then found that the expert analyses were admissible, competent and indicative "of 'a sufficient disagreement' concerning . . . substantial similarity to present a genuine issue of material fact." ER133. It concluded that the Gaye Parties had "made a sufficient showing that elements of 'Blurred Lines' may be substantially similar to protected, original elements of [Give.] [The Gaye Parties] have identified these with particularity for purposes of analytic dissection. Thus, genuine issues of material fact are present as to the extrinsic similarity of the works." *Id.*[6]

---

[6] Appellants contend that the songs did not contain two consecutive copied notes. Pet. 1. This is mistaken, or at least the subject of genuine dispute. The Gayes' expert Judith Finell identified multiple sequences of identical pitches at summary judgment. *See* ER122–25 (describing identical pitch sequences in

(continued . . . )

Nothing more is required by any precedent of this Court. Appellants' contention that the District Court somehow should have applied a more exacting standard is contrary to precedent and indeed would require this Court to overrule *Swirsky*. In that case, the district court disagreed with the expert musicology analysis and performed its own, finding insufficient similarity and granting summary judgment to the defendant. This Court reversed, cautioned that musical compositions are "comprised of a large array of elements" and noted many, including "melody, harmony, rhythm, pitch, tempo, phrasing, structure, chord progression and lyrics," as well as "timbre, tone, spatial organization, consonance, dissonance, accents, note choice, combinations, interplay of instruments, basslines, and new technological sounds." 376 F.3d at 849.[7] And, importantly, even if the individual elements might be unprotected or commonplace, their unique combination may well be subject to copyright protection. *Id.* at 848. The Court concluded:

---

( . . . continued)
signature phrase and hook). There were additional identical sequences in the backup vocals, which the District Court declined to consider at summary judgment. ER126–28.

[7] *Amicus Curiae* Musicologists are simply mistaken in their assertion that copyright analysis in music cases must be limited to similarities in "melody, harmony or rhythm." Dkt. 99 at 2. That has never been the law in this Circuit or elsewhere.

- 13 -

> There is no one magical combination of these factors that will automatically substantiate a musical infringement suit; each allegation of infringement will be unique. So long as the plaintiff can demonstrate, through expert testimony that addresses some or all of these elements and supports its employment of them, that the similarity was "substantial" and to "protected elements" of the copyrighted work, the extrinsic test is satisfied. (*Id.* at 849)

Thus, while of course some copyright cases may be decided as a matter of law based on the extrinsic test,[8] others will present a question for the jury. No error, much less a departure from settled precedent, occurred here.[9]

---

[8] Appellants cite several cases in which summary judgment or a motion to dismiss was granted in favor of a copyright defendant. *See* Pet. 10. Only two are music cases and both involved the *de minimis* exception, which is not at issue here. *See VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 887 (9th Cir. 2016) (copying of 0.23 seconds of instrumental recording found *de minimis*); *Newton v. Diamond*, 388 F.3d 1189, 1196 (9th Cir. 2004) (copying of a 3 note sequence found *de minimis*). The remaining non-music cases generally involved case-specific factors or far fewer indicia of similarity. *See Rentmeester*, 883 F.3d at 1122–23 (9th Cir. 2018) (photograph case; similarities confined to "general ideas or concepts"); *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 624–29 (9th Cir. 2010) (screenplay case; "most important similarities" were in unprotected elements); *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1081 (9th Cir. 2006) (screenplay case; similarities attributable to scenes a faire); *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1180 (9th Cir. 2003) (case involving home video script; similarities attributable to "merger and *scenes a faire*").

[9] *Amicus curiae*, but not the Appellants, assert that there was error at trial based on application of the Circuit's "inverse-ratio" rule. See Dkt. 99 at 11–14; Dkt. 100 at 18–23. They seem not to be aware that *the District Court declined to give the Gayes' requested inverse ratio instruction.* ER228, 1737. In any event, as the panel majority

(continued . . . )

- 14 -

## III.

## EN BANC REVIEW IS INAPPROPRIATE FOR ADDITIONAL REASONS.

The panel decision is particularly ill-suited for further review for two additional reasons. First, any relief for Appellants' requires resolution in their favor of an issue regarding whether the scope of Marvin Gaye's copyright is limited to the deposit copy. Appellees raised this both as an alternative basis for affirmance and as a protective cross appeal; the panel explicitly declined to reach this issue as unnecessary in lights of its disposition of the case. Second, contrary to the protestations of Appellants and their amici, this case involved unique and unlikely to be repeated facts. The claim that the panel decision will chill original musical expression is baseless.

### A. The Scope Of The Copyright In "Give" Should Not Have Been Limited to the Lead Sheet Deposited With the Copyright Office.

The evidence showed that Marvin Gaye composed "Give" in his studio, creating and playing the various parts until he was satisfied with them and recording the resulting work. SER472. After the recording was made, an unknown transcriber created a "lead sheet"

---

( . . . continued)
explained, the instructions as a whole made clear that the jury could not find infringement without finding substantial similarity. Slip op. 25–27.

- 15 -

for deposit with the copyright office—six pages of sheet music, showing the melody line, lyrics, chord notations, and some other musical elements. It did not include many distinctive elements found in the work, including instrumentations, bass line variations, and backup vocal harmonies. ER2410.

At the behest of the Thicke Parties, the District Court ruled that Marvin Gaye's compositional copyright under the 1909 Copyright Act was limited to elements found in the lead sheet. ER116–21. Most relevant here, the judge therefore refused to consider on summary judgment several elements musicologist experts Judith Finell and Ingrid Monson identified in their declarations as similarities between the sound recording of Give and Blurred. These additional compelling similarities were found in the backup vocals, Theme X,[10] the descending bass line in the verse of Give (which occurs at every eighth bar in Blurred), the distinctive keyboard rhythms beginning at the first two bars of each song, the unusual and distinct rhythm

---

[10] Theme X is a core element of Give (appearing 14 times) and copied 25 times in the verse and signature phrase of Blurred. ER613-14. Notably, at trial, the District Court accepted Finell's testimony that Theme X was adequately implied by the lead sheet and permitted testimony concerning it. *See* ER11-12. This is an important example of how the record differed at summary judgment and trial.

produced by percussion parts in the two songs featuring cowbells[11] and open hi-hats, the use of party noises as accompanying sound, certain falsetto in vocal parts, and the omission of guitar in instrument scoring. *See* ER122–32.

Accordingly, any review of the summary judgment order could not proceed without first determining whether the limitation imposed by the District Court was proper. The panel briefly addressed this issue, recognizing it was "unsettled . . . whether copyright protection for musical compositions under the 1909 Act extends only to the four corners of the sheet music deposited with the United States Copyright Office, or whether the commercial sound recordings of the compositions are admissible to shed light on the scope of the underlying copyright." Slip op. 21. The panel noted that "[t]o our knowledge the Thicke Parties' position had not found support in case law until the district court's ruling," and expressed some doubt as to its correctness. Slip op. 21 n.10, 33 n.16 (citing cases under 1909 Act in which jury was permitted to hear recording). But in light of its

---

[11] With some chutzpah, Appellants assert (based on an article in *Rolling Stone*) that "the jury . . . chose to award damages based on secondary similarities between the two tracks—their 'look and feel and cowbells.'" Pet. 11. The jury never heard the track for Give, much less the distinctive cowbells.

disposition of the case, the panel was not required to and did not reach the issue. *Id.* at 21–22.

The petition for rehearing makes no attempt to address this issue, even though it is a prerequisite to the relief sought. As set forth in greater detail in the briefing to the panel (*see* Dkt. 43 at 43–58; Dkt. 73 at 2–16; Dkt. 46 at 27–42), the panel majority was quite correct to doubt the limitation imposed by the District Court. The 1909 Copyright Act protects "any form of record in which the thought of an author may be read or reproduced." Copyright Act of 1909, 35 Stat. 1075 §1(e) (1909) (repealed 1978). The "form of record" from which Marvin Gaye's "thought" may be best "read or reproduced" is the phonorecord he created in his studio.

The deposit requirement of the Copyright Act serves to "enforce contributions of desirable books to the Library of Congress" (*Ladd v. Law & Tech. Press*, 762 F.2d 809, 813 (9th Cir. 1985)) and to assure sufficient material is before the Copyright Office to make an assessment of copyrightability before issuing a registration. *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1162 (1st Cir. 1994), *disapproved on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010). It has never been thought to "delineate[] the scope of the copyright." *Nat'l Conference of Bar Exam'rs v.*

- 18 -

*Multistate Legal Studies, Inc.*, 692 F.2d 478, 485–88 (7th Cir. 1982). The deposit copy may be lost, is quite difficult to access even when not lost, and is never what an alleged infringer has seen or heard. There can be no dispute that a phonorecord contemporaneously created by the composer accurately reflects and is the best evidence of his or her work. Accordingly, beyond establishing that registration has been secured,[12] deposit copies should have no role in copyright litigation over the scope of a musical composition. To rule otherwise is to disenfranchise many artists, particularly those who (like Marvin Gaye and many of his contemporaries) did not read or write music. The District Court's approach—which limited the scope of Marvin Gaye's copyright to those elements found in the lead sheet and prevented the jury from ever hearing the sound recording—was error.

## B. The Panel Decision Will Have No Chilling Effect.

Appellants, and amici in support of the petition for rehearing, significantly overstate the purported effect the panel decision will have. As an initial matter, the panel decision is correct; any effect it might have is altogether appropriate. But that aside, this dispute

---

[12] Appellants conceded from the outset that the Gayes had a valid and enforceable composition copyright in Give; the only question was its scope.

- 19 -

involves idiosyncratic elements unlikely to reoccur, including a remarkable history in which the Thicke Parties first told the public they had tried to model Blurred as closely as possible on Give, then (faced with copyright litigation) pivoted and said their prior statements had been false. The Thicke Parties also served sworn and verified interrogatories saying they had been "inspired" by Marvin Gaye, then claimed in deposition never to have seen their own responses and withdrew them. *See* Dkt 43 at 12 n.5. In any event, the evidence showed that virtually every bar of Blurred copied elements of Give, a "constellation" of similarities that the Gayes' musicologists found unprecedented and stunning. *See, e.g.*, ER581–82. The Thicke Parties failed to identify any other work so closely patterned on Give.

This Court has never reversed a jury verdict for a plaintiff in a music copyright case. And this is not the first time this Court or others ruled against a well-known musician. *See Swirsky*, 376 F.3d 841 (9th Cir. 2004) (Mariah Carey); *Three Boys*, 212 F.3d 477 (9th Cir. 2000) (Michael Bolton); *Bright Tunes Music Corp. v Harrisongs Music, Ltd.*, 420 F. Supp. 177 (S.D.N.Y. 1976) (George Harrison). Each of those decisions produced similar predictions of catastrophe from industry pundits. But Appellants identify no reduction in the

- 20 -

output of new music that occurred after these earlier decisions. Indeed, the RIAA amicus brief suggests exactly the opposite. *See* Dkt 100-2 at 17–18 ("[m]ore music is made available to the public today than ever before . . . . Annual full length albums releases have doubled since 2011").

At the end of the day, beneath all the heat generated by Appellants, this was a heavily litigated and contentious case but not one that broke new ground. The panel majority succinctly and accurately answered the dissent's claim "that our decision will shake the foundations of copyright law, imperil the music industry, and stifle creativity":

> Respectfully, these conjectures are unfounded hyperbole. Our decision does not grant license to copyright a musical style or "groove." Nor does it upset the balance Congress struck between the freedom of artistic expression, on the one hand, and copyright protection of the fruits of that expression, on the other hand. Rather, our decisions hinges on settled procedural principles and the limited nature of our appellate review, dictated by the particular posture of this case and controlling copyright law. Far from heralding the end of musical creativity as we know it, our decision, even construed broadly, reads more accurately as a cautionary tale for future trial counsel wishing to maximize their odds of success. (Slip op. 55–56 (footnote omitted))

## CONCLUSION

For the foregoing reasons, the petition for rehearing en banc should be denied.

- 21 -

DATED:  May 10, 2018.

Respectfully,

ARNOLD & PORTER KAYE          KING & BALLOW
    SCHOLER LLP                  RICHARD S. BUSCH
MARTIN R. GLICK                   PAUL H. DUVALL
DANIEL B. ASIMOW
LISA S. BLATT

WARGO & FRENCH LLP
MARK L. BLOCK

*Attorneys for Defendants/Counter-Claimants/Appellees/Cross-Appellants Frankie Christian Gaye, Nona Marvisa Gaye*

LAW OFFICES OF PAUL N. PHILIPS, APLC
PAUL N. PHILIPS

*Attorneys for Defendant/Counter-Claimant/Appellee/Cross-Appellant Marvin Gaye III*

By:      */s/Martin R. Glick*
             MARTIN R. GLICK

- 22 -

**CERTIFICATE OF COMPLIANCE PURSUANT TO
FED. R. APP. P. 32(a)(7)(C) AND 9TH CIR. R. 40-1**

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C) and 9th Circuit Rule 40-1(a), I certify that the foregoing **RESPONSE TO PETITION FOR REHEARING EN BANC** is proportionally spaced, in a typeface of 14 points or more, and contains 5,030 words, exclusive of those materials not required to be counted under Rule 32(a)(7)(B)(iii). A motion for leave to exceed the page or type-volume limits pursuant to Ninth Circuit Rule 32-2(a) accompanies this brief.

DATED: May 10, 2018.


/s/ Martin R. Glick
MARTIN R. GLICK

**Form 8.** **Certificate of Compliance Pursuant to 9th Circuit Rules 28.1-1(f), 29-2(c)(2) and (3), 32-1, 32-2 or 32-4 for Case Number** <u>15-56880</u>

Note: This form must be signed by the attorney or unrepresented litigant *and attached to the end of the brief.*

I certify that (*check appropriate option*):

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 28.1-1.
The brief is [          ] words or [          ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 32-1.
The brief is [          ] words or [          ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 32-2(b).
The brief is [          ] words or [          ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable, and is filed by (1) ☐ separately represented parties; (2) ☐ a party or parties filing a single brief in response to multiple briefs; or (3) ☐ a party or parties filing a single brief in response to a longer joint brief filed under Rule 32-2(b). The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the longer length limit authorized by court order dated [          ]
The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6). The brief is [          ] words or [          ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable.

☒ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 32-2 (a) and is [ 5030 ] words or [          ] pages, excluding the portions exempted by Fed. R. App. P. 32 (f), if applicable. The brief's type size and type face comply with Fed. R .App. P. 32(a)(5) and (6).

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 29-2 (c)(2) or (3) and is [          ] words or [          ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits set forth at Ninth Circuit Rule 32-4.
The brief is [          ] words or [          ] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

Signature of Attorney or Unrepresented Litigant | /s/ Martin R. Glick | Date | 05/10/18

("s/" plus typed name is acceptable for electronically-filed documents)

*(Rev.12/1/16)*

## CERTIFICATE OF SERVICE
### Case Nos. 15-56880, 16-55089, 16-55626

I hereby certify that I electronically filed the foregoing **RESPONSE TO PETITION FOR REHEARING EN BANC** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on May 10, 2018.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.



/s/ Martin R. Glick
MARTIN R. GLICK